**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNTAE TAYLOR,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JIMINEZ, *et al.*,<br><br>　　　　　Defendants. | Case No.  1:19-cv-00068-JLT-BAM (PC)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S UNAUTHORIZED SURREPLY<br>(ECF No. 108)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT<br>(ECF Nos. 96, 98)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.   Introduction**

　　Plaintiff Shauntae Taylor ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's first amended complaint against Defendants Jimenez, Rodriguez, Huckleberry, Rye, and Hernandez ("Defendants") for deliberate indifference in violation of the Eighth Amendment for failing to treat Plaintiff's swollen left eye following a physical altercation with Defendants.[1]

---

[1] Following Plaintiff's appeal of the Court's final screening order, the Ninth Circuit remanded this case finding that Plaintiff alleged a deliberate indifference claim as follows:  "Taylor alleged that defendants acted with deliberate indifference to his serious medical needs by failing to treat his swollen left eye following a physical altercation with defendants."  (ECF No. 27.) The Court notes that while the first amended complaint alleges only that Defendants acted with deliberate indifference by failing to treat Plaintiff's swollen left eye and falsifying medical reports, (ECF No. 11, p. 8), Plaintiff argues in his motion for summary judgment that Defendants acted with deliberate indifference due to the manner of Plaintiff's medical treatment, specifically that Plaintiff was not assessed in a medical facility

Currently before the Court are the parties' cross-motions for summary judgment.

## II. Procedural Background

On June 20, 2024, Plaintiff filed a motion for summary judgment, or in the alternative to order Defendants to set trial dates. (ECF No. 90.) The Court granted Defendants' motion to strike Plaintiff's motion for summary judgment, without prejudice to re-filing, for failure to comply with Federal and Local Rules. (ECF Nos. 94, 95.)

On July 11, 2024, Plaintiff filed a motion to correct the deficiencies in his June 20, 2024 motion for summary judgment and renewed his motion for summary judgment. (ECF No. 96.) On July 29, 2024, Defendants filed an opposition to Plaintiff's motion for summary judgment, together with a cross-motion for summary judgment on the grounds that the undisputed facts show that Defendants were not deliberately indifferent to Plaintiff's alleged serious medical need and are entitled to qualified immunity. (ECF Nos. 98, 99.) On August 14, 2024, Plaintiff filed a response to Defendants' separate statement of undisputed facts and an opposition to Defendants' motion for summary judgment, also apparently in reply in support of Plaintiff's own motion for summary judgment. (ECF Nos. 102, 103.) On August 27, 2024, Defendants filed reply briefs in response to both of Plaintiff's filings. (ECF Nos. 104, 105.)

On September 19, 2024, Plaintiff filed an "opposition" to Defendants' reply briefs. (ECF No. 107.) Defendants filed a motion to strike the filing as an unauthorized sur-reply. (ECF No. 108.) Plaintiff filed an opposition to Defendants' motion to strike on October 18, 2024. (ECF No. 109.)

The parties' cross motions for summary judgment and Defendants' motion to strike are deemed submitted. Local Rule 230(l). For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be denied, and Defendants' motion for summary judgment be granted.

---

and the assessment was conducted while Plaintiff was in hand and leg restraints, (ECF No. 96). The Court addresses these additional arguments in this Order.

Previously, on March 21, 2024, the Court granted Defendants' motion for judgment on the pleadings and dismissed Plaintiff's claims against Defendants for excessive force in violation of the Eighth Amendment, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). (ECF Nos. 72, 78.) Thus, the sole remaining claim is deliberate indifference to medical care.

2

**III.    Defendants' Motion to Strike Plaintiff's Unauthorized Sur-reply**

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The Court generally views motions for leave to file sur-replies with disfavor. *Hill v. England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing *Fedrick v. Mercedes–Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this Circuit, courts are required to afford *pro se* litigants additional leniency. *E.g., Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Plaintiff did not seek leave of Court before filing his sur-reply, and argues that Defendants' motion to strike his sur-reply should be denied because Plaintiff believes Defendants are using their expertise in the law to confuse, bias, and overbear the proceedings. To the extent Plaintiff argues that the motion should also be denied because Defendants' cross-motion for summary judgment was filed before Plaintiff's motion for summary judgment was fully briefed or decided, this argument is unpersuasive. Defendants were not required to wait for Plaintiff's summary judgment to be briefed or decided before filing their cross-motion for summary judgment.

The Court has reviewed Plaintiff's sur-reply and notes that the arguments raised therein are repetitive of those presented in previous filings. Furthermore, the Court finds that the contents do not materially alter the findings and recommendations that the Court will make regarding the cross-motions for summary judgment, detailed below. As such, Defendants'

3

motion to strike Plaintiff's sur-reply is granted.

**IV.    Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).

In arriving at these conclusions, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**V.     Discussion**

      A.     <u>Evidentiary Objections</u>

In their response to Plaintiff's Statement of Undisputed Facts, Defendants raise a variety of objections, including that Plaintiff's stated facts are: conclusory and unsupported by admissible evidence pursuant to Federal Rule of Evidence 702, misstate documents, contradicted by evidence in the record, refuted by expert testimony, and irrelevant to Plaintiff's deliberate indifference to medical care claim in this action. (ECF No. 99, pp. 2–6.)

In response to Defendants' Separate Statement of Undisputed Facts, Plaintiff also raises a variety of objections, including that Defendants rely on hearsay evidence, Defendants did not comply with prison policies in producing certain video evidence, or evidence is too old to be

admissible.  (ECF No. 102.)  Plaintiff also argues that Defendants failed to present certain evidence to Plaintiff or the Court prior to Plaintiff's June 12, 2024 deposition and therefore such evidence is inadmissible, questions the reliability or truth of Defendants' evidence and factual statements, and argues that Defendants' (or defense counsel's) failure to refute certain statements during Plaintiff's deposition makes contrary factual statements inadmissible at this time.  (*Id.*)

Defendants further object to Plaintiff's Response to Defendants' Separate Statement of Undisputed Facts on the basis that Plaintiff's responses are based on meritless objections, not responsive, unintelligible, fail to refute the asserted fact, and are unsupported by evidence.  (ECF No. 104, pp. 2–13.)

As noted above, not every objection will be addressed by the Court individually, as doing so is neither necessary nor is that the practice of this Court in the summary judgment context.  For the sake of clarity and to the extent it is appropriate, certain individual objections have been addressed by the Court below.  Other objections are better dealt with here, in general terms.

The hearsay objections are overruled.  Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial.  *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).  Furthermore, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay."  *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004).  At this stage, the Court did not find the hearsay objections raised by Plaintiff to be preclusive of the evidence submitted, or that the statements or evidence objected to were, in fact, hearsay.

Plaintiff's numerous objections challenging the admissibility of Dr. Feinberg's testimony are also overruled.  Dr. Feinberg adequately set forth the foundation for his knowledge and expertise in his declaration and curriculum vitae, and the Court finds these objections baseless.  The Court further notes that Plaintiff has not provided any contrary evidence to demonstrate a true dispute as to his expertise in reviewing medical records and medical procedures pertinent to medical treatment in a correctional setting, the standard of care and skill ordinarily exercised by reputable members of the medical profession providing medical care in prison, and the practices,

1  policies, and procedures promulgated by the California Department of Corrections and
2  Rehabilitation ("CDCR") and the California Correctional Health Care Services regarding the
3  delivery of health care to inmates in CDCR's prisons. Plaintiff is also not qualified to challenge
4  the medical opinions of Dr. Feinberg, as Plaintiff has not shown that he qualifies as an expert
5  medical witness in order to be able to opine on the accuracy of Dr. Feinberg's conclusions. *See*
6  Fed. R. Evid. 702. As Plaintiff is a lay witness, the only admissible evidence he can provide on
7  his own is limited to opinions that are rationally based on his perception; that are helpful to
8  clearly understanding his testimony or to determining a fact in issue; and are not based on
9  scientific, technical, or other specialized knowledge within the scope of Rule 702, such as
10 medical opinions. *See* Fed. R. Evid. 701.

11       To the extent Plaintiff raises objections to excerpts from his own prison or medical
12 records on the basis that the documents might not be "true" or are otherwise reliable, the Court
13 construes these arguments as objections for lack of authentication, and the objections are
14 overruled. Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532–33 (9th
15 Cir. 2011). While the records are subject to authentication under Rule 901(b)(6) in any event, the
16 Court nonetheless notes the absence of any evidence or argument—other than Plaintiff's
17 rhetorical questions and conclusory allegations of unreliability—suggesting the existence of a
18 legitimate challenge to the records on authentication grounds. *See Chamberlain v. Les Schwab*
19 *Tire Center of Cal., Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal.
20 Dec. 3, 2012) (citing *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1120 (E.D. Cal.
21 2006)) (rejecting "purely procedural" authentication objection). Further, Plaintiff must do more
22 than attack the credibility of Defendants' evidence. *See Nat'l Union Fire. Ins. Co. v. Argonaut*
23 *Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an
24 unspecified hope of undermining his or her credibility suffices to avert . . . judgment.").

25       Defendant's argument that Plaintiff has failed to provide supporting evidence for many of
26 the facts which he claims are in dispute, is well taken. Federal Rule of Civil Procedure 56(c)(1)
27 specifically requires that a party asserting that a fact is genuinely disputed must support the
28 assertion by "citing to particular parts of materials in the record . . . or showing that the materials

cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Similarly, pursuant to Local Rule 260(b), a party opposing a motion for summary judgment is required to deny those facts that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." To the extent Plaintiff has identified that a fact is in dispute, or claims that a fact he presents is not in dispute, but fails to provide supporting evidence or otherwise demonstrate that the evidence relied upon by Defendants is inadmissible, such fact as presented by Defendants will be accepted as undisputed.

More generally, Plaintiff's arguments that Defendants were required to present any evidence or otherwise refute any factual statements made by Plaintiff during his deposition, are rejected. Defendants, and defense counsel, were under no obligation to present evidence or prove or refute any factual statements during Plaintiff's deposition. *See* Fed. R. Civ. P. 30; *Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003) (statements by counsel are not evidence). To the extent Plaintiff is arguing that he was never provided with certain evidence now relied upon in Defendants' motion for summary judgment, or that other video evidence Plaintiff believes supports his own summary judgment motion was not provided to him, Plaintiff has not argued that he ever requested such evidence be produced to him during the course of discovery. If Plaintiff did make such a request, there is no evidence in the record that Plaintiff ever attempted to file a motion to compel or otherwise notify the Court that such evidence was not produced to Plaintiff.

      B.     Undisputed Material Facts ("UMF")[2]

---

[2] *See* Plaintiff's Statement of Undisputed Facts, (ECF No. 96, pp. 7–8), Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, (ECF No. 98-3), Response to Plaintiff's Statement of Facts, (ECF No. 99, pp. 2–6), Plaintiff's Response to Separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, (ECF No. 102), and Reply to Plaintiff's Response to Defendants' Undisputed Facts in Support of Summary Judgment, (ECF No. 104). Defendants argue throughout their responses that Plaintiff did not comply with the rules in preparing his statement of facts and responding to Defendants' statement of facts, including by failing to provide "a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support" of any disputed facts. Local Rule 260(b). To the extent the Court sustains Defendants' objections, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint and declaration submitted in support of his motion for summary judgment and signed under penalty of perjury. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004)

1. Plaintiff Shauntae Taylor (G52410) ("Plaintiff") and Defendants were involved in a use-of-force incident at Kern Valley State Prison Building D4 on December 24, 2017. (ECF No. 98-6 ("Hernandez Decl.") ¶ 3, Ex. A; ECF No. 98-6 ("Huckleberry Decl.") ¶ 3, Ex. A; ECF No. 98-7 ("Jimenez Decl.") ¶ 3, Ex. A; ECF No. 98-11 ("Rodriguez Decl.") ¶ 3, Ex. A; ECF No. 98-9 ("Rye Decl.") ¶ 3, Ex. A; ECF No. 98-10 ("Ybarra Decl.") ¶¶ 2–3; ECF No. 98-8 ("Nash Decl.") ¶ 3, Ex. A.)

2. Following the December 24, 2017 incident, Defendant Lieutenant Huckleberry (who was a sergeant at that time) instructed non-party Correctional Officers Franco and Ybarra to escort Plaintiff to the D Program Office holding cell. (Huckleberry Decl. ¶ 4, Ex. A; Ybarra Decl. ¶¶ 2–3.)

3. Following the December 24, 2017 incident, non-party D Medical Licensed Vocational Nurse Nash evaluated Plaintiff in the Program Office and completed a Form 7219 Medical Report of Injury. (Ybarra Decl. ¶¶ 3–4; Nash Decl. ¶ 3, Ex. A.)

4. During her December 24, 2017 encounter with Plaintiff, Nurse Nash observed a bruised/discolored area and swelling to Plaintiff's left eye, which she documented in her report. (Nash Decl. ¶ 4, Ex. A.)

5. During her December 24, 2017 encounter with Plaintiff, Nurse Nash informed Registered Nurse Atwal in the Treatment and Triage Area regarding Plaintiff and then returned Plaintiff to custody because, on examination, Plaintiff's eye injury was not serious and did not require further treatment. (*Id.*)

6. Defendants were not present for Plaintiff's encounter with Nurse Nash on December 24, 2017,[3] and had no involvement in Plaintiff's medical evaluation or treatment for his swollen left eye on that date or any time thereafter. (Hernandez Decl. ¶¶ 3–4, Ex. A; Huckleberry Decl. ¶¶ 4–5; Jimenez Decl. ¶¶ 3–4; Rodriguez Decl. ¶¶ 3–4; Rye Decl.

---

(verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

[3] Defendants' Separate Statement of Undisputed Fact No. 6 originally listed this date as December 25, 2017. (ECF No. 98-3, p. 2.) This appears to be a clerical error.

9

¶¶ 3–4; Ybarra Decl. ¶ 4.)

7. Defendants are custody staff and not responsible for providing medical evaluation or treatment to prisoners. (ECF No. 98-4 ("Feinberg Decl.") ¶ 18.)

8. Per the Health Care Department of Operations Manuel, prisoners with health care needs may submit a Form 7362, Health Care Services Request Form, at any time. (*Id.* ¶ 11; HCDOM § 3.1.5(c)(2)(B)(2)(b), https://cchcs.ca.gov/wpcontent/uploads/sites/60/HC/HCDOMch03-art1.5.pdf (last visited Jul. 9, 2024).)

9. Plaintiff first submitted a Form 7362 complaining about his left eye, among several other concerns, on January 11, 2018. (Feinberg Decl. ¶ 11, Ex. B, Bates 2.)

10. In response to Plaintiff's January 11, 2018 Form 7362, Plaintiff was seen by non-party Registered Nurse Hernandez on January 12, 2018. (*Id.* ¶ 11, Ex. B, Bates 3–10.)

11. During her January 12, 2018 encounter with Plaintiff, Nurse Hernandez documented Plaintiff's various complaints, but Plaintiff's exam was normal. (*Id.*)

12. After her January 12, 2018 encounter with Plaintiff, Nurse Hernandez submitted a request for Plaintiff to be seen by a Primary Care Physician within fourteen days. (*Id.*)

13. In response to Nurse Hernandez's request, non-party Dr. Joelson evaluated Plaintiff on January 25, 2018 finding "[patient] notes sensitivity L face since trauma years ago, but perhaps more sensitive from recent incident end of December. …Exam benign overall." (*Id.* ¶ 12, Ex. B, Bates 12–15.)

14. Dr. Joelson ordered facial and sinus x-rays on January 25, 2018. (*Id.* ¶ 12, Ex. B, Bates 12–17.)

15. Plaintiff's x-rays were completed on February 5, 2018, finding "[t]he facial bones are intact. The paranasal sinuses are clear. The orbits are unremarkable. Impression: No osseous (bony) abnormality." (*Id.* ¶ 12, Ex. B, Bates 16–17.)

16. Plaintiff had a follow-up exam with non-party Dr. Ulit on February 23, 2018. (*Id.* ¶ 13, Ex. B, Bates 11–12.)

17. Per Dr. Ulit, Plaintiff's February 5, 2018 x-rays were unremarkable and he opined that

1  Plaintiff's alleged discomfort was due to allergies. (*Id.*)

2  18. On April 26, 2018, Plaintiff submitted a Form 7362 requesting to be seen for several

3  issues including left facial pain following a physical altercation three to four months prior,

4  recent dizziness, and left foot and leg pain. (*Id.* ¶ 14, Ex. B, Bates 19.)

5  19. On April 30, 2018, Plaintiff saw non-party Registered Nurse Grewal in response to the

6  7362. (*Id.* ¶ 15, Ex. B, Bates 20–26.)

7  20. On physical exam on April 30, 2018, Nurse Grewal noted that while Plaintiff complained

8  of tenderness below his left orbital area, there was no bruising or discoloration, no

9  swelling, and he denied any visual changes. (*Id.*)

10 21. Per Nurse Grewal, there was also no redness of the left eye and no signs of injury on April

11 30, 2018. (*Id.*)

12 22. Nurse Grewal contacted Plaintiff's Primary Care Physician, non-party Dr. Sao, who

13 advised that the follow-up for Plaintiff's concerns should be at his scheduled physician

14 appointment. (*Id.*)

15 23. On May 30, 2018, Plaintiff saw Dr. Sao for follow-up. (*Id.* ¶ 16, Ex. B, Bates 27.)

16 24. At Plaintiff's May 30, 2018 appointment, Plaintiff discussed chronic pain in his left foot

17 resulting from a gunshot wound several years prior. (*Id.*)

18 25. Plaintiff also discussed a fungal infection of his fingers at his May 30, 2018 appointment.

19 (*Id.*)

20 26. Plaintiff issued no concerns to Dr. Sao of left facial pain following a physical altercation

21 several months prior at his May 30, 2018 appointment. (*Id.*)

22 27. Following a review of Plaintiff's medical records, Defendants' medical expert, Dr.

23 Feinberg, found no documentation of any further complaints or concerns from Plaintiff

24 relating to left eye or left facial injuries, be they secondary to an incident from December

25 24, 2017, or otherwise. (*Id.* ¶ 17.)

26 28. Based on a review of the medical records and his training and experience, it is Dr.

27 Feinberg's medical opinion that Plaintiff's claim that Defendants acted with deliberate

28 indifference to his serious medical needs by failing to treat his swollen left eye is not

11

supported by the medical record. (*Id.* ¶ 18.)

29. Plaintiff's medical records show he was evaluated by medical shortly after the December 24, 2017 incident and was seen several times by multiple healthcare staff thereafter. (*Id.* ¶ 18, Ex. B.)

30. Plaintiff's medical records show his initial swelling from December 24, 2017 altercation resolved, his x-rays were normal, there is no record of any further medical complaints related to the altercation, and Plaintiff recovered. (*Id.*)

31. It is Dr. Feinberg's medical opinion that no better outcome could have been expected with respect to Plaintiff's December 24, 2017 eye injury. (*Id.* ¶ 18.)

C.    Parties' Positions

In his motion for summary judgment, Plaintiff's primary argument appears to be that after the use of force incident with Defendants, Defendants sent him to the program office to have his "very serious injuries," specifically a left eye that was swollen completely shut, assessed by Nurse Nash while he was in hand and leg restraints, rather than sending Plaintiff to the medical triage facility. (ECF No. 96.) Plaintiff also argues that Defendants perjured themselves by failing to document in their incident reports that they were exposed to OC vapor or OC spray, when Nurse Nash documented that Plaintiff was exposed to OC spray. Plaintiff also refers to materials submitted with his prior summary judgment motion in support of his arguments.[4]

In opposition, and in their cross motion for summary judgment, Defendants contend that Plaintiff's claim that he suffered a very serious injury and it was inappropriate for medical staff to evaluate him while restrained in the program office is conclusory and unsupported by admissible evidence. Plaintiff's swollen left eye did not present a serious medical need such that further treatment could have produced a better outcome for Plaintiff's left eye injury. In addition, Plaintiff is not qualified to opine on the seriousness of his injury or what care was medically required. Plaintiff's claim is also contradicted by his medical records and medical staff who evaluated Plaintiff, documented his injury, and determined that Plaintiff could be returned to

---

[4] To the extent Plaintiff relies on evidence or arguments submitted with his June 20, 2024 motion for summary judgment, (ECF No. 90), Plaintiff is reminded that his prior motion for summary judgment was stricken for failure to comply with Federal and Local Rules, (ECF No. 95), and accordingly is no longer part of the record in this action.

12

custody because his injury was not serious and required no further treatment. In response to Plaintiff's later health care requests, he was seen by multiple providers who confirmed that Plaintiff's swollen left eye healed and Plaintiff had no sign of injury. Plaintiff's disagreement with the assessments or treatment provided to him by non-party medical staff would not provide a basis for summary judgment even if he were proceeding on such a claim. Further, Defendants were not deliberately indifferent to Plaintiff's medical needs because Defendants are custody staff who are not responsible for providing medical care, were not present for Plaintiff's assessment, and had no involvement in any of Plaintiff's subsequent medical care. Plaintiff's remaining arguments—that defense counsel did not refute Plaintiff's allegations during Plaintiff's June 12, 2024 deposition, that Defendants must have told Nurse Nash to document that Plaintiff was uncooperative during her assessment, that Defendants made false statements in their incident reports, and that there are inconsistencies in the reports regarding exposure to OC spray or vapor—are irrelevant or speculative. Finally, to the extent the Court finds that Defendants violated Plaintiff's rights under the Eighth Amendment, Defendants are entitled to qualified immunity.

In opposition to Defendants' cross-motion for summary judgment and in reply in support of his own summary judgment, Plaintiff first raises several procedural arguments. Plaintiff argues that Defendants have violated fairness and the law by filing a cross-motion for summary judgment before Plaintiff's summary judgment motion could be decided, Plaintiff has not previously heard Nurse Nash's opinion regarding Plaintiff's swollen eye, Plaintiff has had most of his photos and evidence lost or confiscated, and Plaintiff could prove his claims if he were represented by counsel. Plaintiff next challenges Defendants' evidence, arguing that Defendants' photos show injuries not documented on the medical report of injury. Finally, Plaintiff raises a variety of other arguments, including that he had suffered previous injuries to his left orbit/eye socket that meant he should have received further medical treatment due to a higher risk of other complications, it was unfathomable for any medical personnel seeing Plaintiff's eye swollen shut to claim the injury was not serious, Nurse Nash attempted to downplay the severity of Plaintiff's injuries on Defendants' behalf, Plaintiff was unable to stand during Nurse Nash's examination

because he was in pain rather than because he was uncooperative, there was no vapor or OC spray on any of the Defendants because Plaintiff will prove at trial that the grenade was thrown into Plaintiff's cell to make him run out of the cell, and Defendants had no intention of following up on Plaintiff's swollen left eye and it was Plaintiff who was forced to submit a request for medical treatment so he could be seen by an actual doctor for his injury.

In reply to Plaintiff's opposition to their motion for summary judgment, Defendants again argue that Plaintiff has produced no admissible evidence to support his contention that his left eye injury presented a serious medical need, Plaintiff's medical records show this injury was not serious and healed on its own, and expert opinion supports that Plaintiff could not have expected a better outcome. Furthermore, it is undisputed that Defendants, who are all custody staff, were not responsible for providing Plaintiff medical care and had no responsibility in Plaintiff's medical care following the incident or any time thereafter. Plaintiff's disagreement with his medical treatment by non-party medical staff does not support a claim for deliberate indifference against non-party medical staff, nor is Plaintiff proceeding in this case on such a claim.

### D. Analysis

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible

medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Following the incident on December 24, 2017, Defendant Huckleberry instructed non-party Correctional Officers Franco and Ybarra to escort Plaintiff to the D Program Office holding cell, where Plaintiff was evaluated by non-party D Medical Licensed Vocational Nurse Nash. UMF 2–3. Nurse Nash completed a Form 7219 Medical Report of Injury and documented a bruised/discolored area and swelling to Plaintiff's left eye. UMF 3–4. Nurse Nash informed non-party Registered Nurse Atwal in the Treatment and Triage Area regarding Plaintiff and then returned Plaintiff to custody because, on examination, Plaintiff's eye injury was not serious and did not require further treatment. UMF 5.

First, based on the undisputed evidence in the record, Plaintiff's swollen left eye was not a serious medical need. Nurse Nash examined Plaintiff and determined that Plaintiff's eye injury was not serious and did not require further treatment. UMF 5. Dr. Feinberg, similarly concluded

that, based on a review of the medical records and his training and experience, it was Dr. Feinberg's medical opinion that Plaintiff's claim that Defendants acted with deliberate indifference to Plaintiff's serious medical needs by failing to treat his swollen left eye is not supported by the medical record, and no better outcome could have been expected with respect to Plaintiff's December 24, 2017 eye injury. UMF 27–31 (e.g., "Plaintiff's medical records show he was evaluated by medical shortly after the December 24, 2017 incident and was seen several times by multiple healthcare staff thereafter"). To the extent Plaintiff disagrees with Nurse Nash or Dr. Feinberg's assessments, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez*, 891 F.2d at 242), overruled in part on other grounds, *Peralta*, 744 F.3d at 1082–83; *Wilhelm*, 680 F.3d at 1122–23 (citing *Jackson*, 90 F.3d at 332). Plaintiff has presented no more than speculation that Nurse Nash downplayed the severity of Plaintiff's injuries for the benefit of Defendants or that Plaintiff qualifies as an expert witness in order to be able to opine on the appropriateness and timeliness of the medical care he received. *See* Fed. R. Evid. 702. As Plaintiff is a lay witness, the only admissible evidence he can provide is limited to opinions that are rationally based on his perception; that are helpful to clearly understanding his testimony or to determining a fact in issue; and are not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 such as medical opinions. *See* Fed. R. Evid. 701. Finally, even if Plaintiff's disagreement presented more than a difference of opinion regarding the appropriateness or extent of his medical care, Plaintiff is not proceeding on any claims against Nurse Nash or any other medical providers who later assessed Plaintiff's left eye injury. Thus, any disagreement as to the type of medical care he was provided is irrelevant to the claims presented as to the named Defendants.

  Even assuming Plaintiff's swollen left eye presented a serious medical need, the undisputed facts demonstrate that Defendants were not deliberately indifferent to Plaintiff's serious medical need. Any arguments regarding the sufficiency of the medical treatment provided for Plaintiff's left eye injury on December 24, 2017, or by any other medical providers

who later examined or treated Plaintiff, are not relevant to Plaintiff's claims against Defendants in this action. Defendants are custody staff who are not responsible for providing medical evaluation or treatment to prisoners. UMF 7. After the incident with Defendants, Defendant Huckleberry sent Plaintiff to the Program Office to be assessed by medical staff to determine if further treatment was needed for Plaintiff's injuries. UMF 2. Plaintiff was indeed examined by medical staff. Thus, Defendants addressed any need for Plaintiff's immediate medical care. After ensuring Plaintiff was sent for medical assessment, Defendants had no further involvement in Plaintiff's care or treatment for his swollen left eye. UMF 6. Despite Plaintiff's arguments to the contrary, it is not material that Plaintiff was assessed in the Program Office or that he was kept in hand and leg restraints during Nurse Nash's examination. At no point does Plaintiff allege that the location of his examination or the extent of his restraints prevented Nurse Nash from assessing Plaintiff's swollen left eye—the only injury at issue in this action. The medical care provided adequately addressed the medical need. UMF 31 ("It is Dr. Feinberg's medical opinion that no better outcome could have been expected with respect to Plaintiff's December 24, 2017 eye injury.") Any argument regarding discrepancies between Plaintiff's or Defendants' alleged exposure to OC spray or vapor or the source of any such exposure also does not appear relevant to whether Plaintiff received adequate medical care for his left eye injury. It is undisputed that Defendants sent Plaintiff for medical care, and Plaintiff, in fact, received medical care for his eye.

Thus, based on the undisputed evidence in the record, the Court finds that summary judgment for Defendants is appropriate as to Plaintiff's deliberate indifference claims against Defendants.

Defendants also assert that the Court should grant summary judgment on the basis of qualified immunity. However, the Court finds that this argument need not be reached, based upon the above determination regarding the undisputed facts in this case.

## VI. Order and Recommendations

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's motion to strike, (ECF No. 108), is granted.

Furthermore, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment, (ECF No. 96), be denied; and
2. Defendants' motion for summary judgment, (ECF No. 98), be granted.

\*\*\*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 18, 2025**          /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE